LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Emily A. Tornabene
State Bar No. 030855
Stanley Lubin
State Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona  85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email:   nick@lubinandenoch.com

KAPLAN YOUNG & MOLL PARRÓN
Matthew S. Sarelson, *pro hac vice* admission forthcoming
Florida State Bar No. 888281
600 Brickell Avenue, Ste. 1715
Miami, Florida  33131-3076
Telephone: (305) 330-6090
Facsimile: (305) 531-2405
Email:   msarelson@kymplaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ed E. Alonzo, on behalf of himself and all other similarly situated<br><br>   Plaintiff,<br><br>v.<br><br>Akal Security, Inc.,<br><br>   Defendant. | No.<br><br><br>**HYBRID COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Ed E. Alonzo ("Alonzo") sues Defendant Akal Security, Inc. ("Akal") for violating the minimum wage provisions and overtime provisions of the Fair Labor Standards Act ("FLSA") as well as the provisions of the Arizona Minimum Wage Act ("AMWA").

**Parties, Jurisdiction, Venue, Facts**

1. Alonzo is and was, at all material times, an

employee of Akal and a non-exempt employee within the meaning of the FLSA. Alonzo is a citizen of the United States who resides in Maricopa County, Arizona. Alonzo is an Air Security Officer ("ASO") who was responsible for the supervision of deportees during flights back to their home country.

2. Alonzo has been employed by Akal since July 2011.

3. Akal is a New Mexico corporation with its principal place of business in New Mexico. It maintains an operations facility in Mesa, Arizona. Alonzo worked out of Akal's Mesa facility. Akal is a government contractor. Akal is the subcontractor to CSI Aviation, Inc. ("CSI"). CSI's contract with the federal government requires it and its subcontractors, including Akal, to comply with all federal, state and local laws and regulations.

4. Jurisdiction is based on 28 U.S.C. § 1331 (federal question jurisdiction).

5. Venue is proper in Maricopa County, Arizona, as Alonzo's employment was based in Mesa, Arizona at Akal's Mesa operation. 28 U.S.C. § 82.

6. Alonzo worked and still works for Akal as an ASO. His rate of pay was and is $25.58 per hour. Alonzo is and was a non-exempt employee.

7. Alonzo is and was not paid on a salary basis and is not paid any type of flat weekly compensation for all hours worked during the week. Alonzo is an hourly employee.

8. Alonzo's job duties included the direct supervision

of deportees upon their arrival at Akal, their loading onto aircraft for deportation, and in-flight supervision during the trip to the deportee's home country.

9. After depositing deportees in their home country, Alonzo returns with the rest of the flight crew to the United States. Alonzo is compensated for the return flight home. Returning home on the aircraft is part of the ASO's job.

10. In addition to traveling for Akal on the return flight home (*i.e.*, it is travel that is all in a day's work), the ASOs provide services during the return flight home, including cleaning up the aircraft, collecting and inventorying supplies, filling out paperwork and generally preparing for the next mission.

11. The ASOs are not obligated to take a lunch break or to take a lunch break of a given duration. An ASO may not take any lunch break, or, for example, may take a two minute lunch break to eat a power bar. The ASOs may take a lunch break on an outbound flight. Regardless of whether an ASO takes a lunch break, and regardless of how long any actual lunch break is, the ASO is automatically deducted one hour of compensation.

12. Akal does not keep records of any ASO's lunch break.

13. The one-hour lunch break deduction was completely arbitrary and had no bearing on Alonzo actually taking any lunch break.

14. Akal has a company-wide policy of mandating that ASO employees be docked one hour of pay on each return flight back to the United States when no deportees are on board. Alonzo does not actually take a "lunch break" and any meal is eaten while performing services for the company. The one-hour deduction is completely arbitrary, as it bears no relationship to any actual lunch break.

15. After the ASO signs and submits a blank timesheet, the supervisor adds in a random one-hour deduction under the guise of a "lunch break." The start and stop time of any "lunch break" is made up by the supervisor.

16. There are numerous employees who are similarly situated and who lose the same one-hour of pay pursuant to Akal's lunch break policy.

17. At all times on the return flight, Alonzo and the other ASOs are captive on the plane, severely restricting their ability to do any activity for their own benefit. The ASOs cannot make telephone calls, stream internet or movies, send text messages, run errands, pick up dry cleaning, run to a bank, check on their kids or other loved ones, make doctor appointments or do anything else that would be consistent with a bona fide meal break within the meaning of the FLSA.

18. The ASOs are not given bona fide meal breaks within the meaning of the FLSA. Even assuming, *arguendo*, the ASOs consumed any food on the plane, they did not do so in adequate facilities provided by the employer. The

deportees – some of whom are murderers and child rapists – routinely defecate, urinate and vomit in their seats. The planes smell of feces, urine and vomit. The ASOs do not clean the feces, urine or vomit. Instead, the feces, urine or vomit remains until the plane returns to its home base so that an environmental decontamination team can properly clean up the bodily fluids.

19. To the extent that the unpaid lunch break hours were hours in excess of forty hours per week, Alonzo is entitled to time-and-a half for those hours.

20. Alonzo and the other ASOs did not and do not receive minimum wage compensation for the hour worked that was improperly deducted from their pay as a result of Akal's lunch break policy.

21. Alonzo and the other ASOs did not and do not receive their regular rate of pay for the hour worked that was improperly deducted from their pay as a result of Akal's lunch break policy.

22. Akal has been aware of its violation of the FLSA for many years. In 2013, Akal was sued by several ASOs in Texas as a result of the same lunch break policy at issue here. *See Kankel v. Akal Security, Inc.*, N.D. Tex. Case No. 3:13-cv-2651. A **nationwide** collective action was certified with over 100 opt-ins. *Id*. at D.E. 68-1. The result of that lawsuit was a collective action settlement that included a release of all FLSA claims occurring on or before June 14, 2014. *Id*. (The release in *Kankel* was limited to

releasing claims under the FLSA and no other statutory or common law claim.)

23. It is possible that one or more potential opt-ins who were part of the settlement of the Texas litigation is or will be opt-ins in this litigation. For those opt-ins, they would be limited to seeking compensation under the FLSA for a violation occurring after the release date of June 14, 2014.

24. Akal was also sued in Florida for an identical FLSA violation. *See Gelber v. Akal Security, Inc.*, S.D. Florida Case No. 16-23170. The district judge in *Gelber* certified the collective statewide and there are currently twenty opt-ins.

25. Akal did not alter its policy with respect to deducting an hour's pay for an alleged lunch break even after the Texas and Florida litigation. Thus, Akal knows it is violating the FLSA and yet it continues to do so even after being sued and paying out funds for its violation.

### Count I – FLSA/Unpaid Minimum Wages

26. Alonzo incorporates paragraphs 1 to 25.

27. Alonzo was and is a non-exempt employee of Akal within the meaning of the FLSA. Alonzo is paid hourly and not on a salary or weekly basis.

28. Akal was, at all material times, an employer within the meaning of the FLSA.

29. Alonzo had one-hour of compensation automatically deducted from his compensation on return flights even though

the return flight to the United States was and is part of his job. Thus, Alonzo worked for Akal for one hour on each return flight without any compensation.

30. For the alleged hour-long lunch break (even though there was no bona fide lunch break), Alonzo and his colleagues were paid zero dollars per hour.

31. The automatic one-hour deduction bears no relationship to any actual time spent by the ASOs not working for Akal. In fact, Akal has no records of any time that Alonzo and his colleagues spent not working for Akal.

32. The ASOs, including Alonzo, were not paid minimum wages by Akal for the time periods stated above.

33. Akal's violation of the FLSA was willful and intentional.

34. Alonzo and his colleagues are entitled to an award of back pay and liquidated damages equal to the amount of the back pay.

### Count II - FLSA/Unpaid Overtime

35. Alonzo incorporates paragraph 1 to 25.

36. Alonzo was and is a non-exempt employee of Akal within the meaning of the FLSA. He is paid hourly and not on a salary or weekly basis.

37. Akal was, at all material times, an employer within the meaning of the FLSA.

38. Alonzo and his colleagues worked for Akal and, in certain weeks, worked in excess of forty hours per week. It is possible that, in any given week, the unpaid lunch break

7

hours would have been hours in excess of forty hours per week.  For those weeks, the ASOs are entitled to overtime pay at a rate of 1.5 times their regular rate of pay.

39.  Alonzo was not paid overtime wages by Akal for the time periods stated above.

40.  Akal's violation of the FLSA was willful and intentional.

41.  Alonzo and his colleagues are entitled to an award of overtime back pay and liquidated damages equal to the amount of the back pay.

### Count III – AMWA/Unpaid Minimum Wages

42.  Alonzo incorporates paragraphs 1 to 25.

43.  Alonzo is paid hourly and not on a salary or weekly basis.

44.  Akal was, at all material times, an employer within the meaning of the AMWA.

45.  Alonzo had one-hour of compensation automatically deducted from his compensation on return flights even though the return flight to the United States was and is part of his job.  Thus, Alonzo worked for Akal for one hour on each return flight without any compensation.

46.  For the alleged hour-long lunch break (even though there was no bona fide lunch break), Alonzo and his colleagues were paid zero dollars per hour.

47.  The automatic one-hour deduction bears no relationship to any actual time spent by the ASOs not working for Akal.  In fact, Akal has no records of any time

that Alonzo and his colleagues spent not working for Akal.

48. The ASOs, including Alonzo, were not paid minimum wages by Akal for the time periods stated above.

49. Akal has willfully failed to pay wages at the rate of the AMWA, codified at A.R.S. § 23-363(A). Alonzo and his colleagues are entitled to recover the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages pursuant to A.R.S. § 23-364(G).

50. Akal's violation of the AMWA was committed as a matter of a continuing course of employer conduct within the meaning of A.R.S. § 23-364(H). As such, this action encompasses all violations that occurred from January 1, 2007 until the present day. *Id.*

## PRAYER FOR RELIEF

Alonzo prays that he, and the other ASOs in Arizona, recover from Akal the following:

1. An award of unpaid overtime and minimum wages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§ 206 and 216(b);

2. An award of liquidated damages regarding # 1, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

3. An award of treble the sum of unpaid minimum wages, from January 1, 2007 onward, pursuant to A.R.S. § 23-364(G);

4. In the event Akal fails to satisfy any judgment for Plantiff(s), *to wit*, satisfy a judgment against Akal within

9

ten days of the Order becoming final, Akal shall pay Plaintiff(s) an amount which is treble the amount of the outstanding judgment with interest thereon, in accordance with A.R.S. § 23-360;

5. An enhancement payment of no less than five thousand dollars ($5,000) to Alonzo as compensation for the expense he has incurred on behalf of the class;

6. Pre-judgment and post judgment interest on unpaid back wages pursuant to, *inter alia*, A.R.S. § 23-364(G);

7. Attorneys' fees pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364(G);

8. Court costs and costs of litigation pursuant to 29 U.S.C. § 216(b) and A.R.S. § 23-364(G);

9. A declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that Akal has violated its statutory and legal obligations and deprived Alonzo and his colleagues of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein; and

10. Such other and further equitable relief as the Court deems just.

DATED this 20th day of March 2017.

LUBIN & ENOCH, P.C.
KAPLAN YOUNG & MOLL PARRÓN


By: /s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Alonzo demands a trial by jury on all questions raised by the foregoing complaint.

DATED this 20th day of March 2017.

                              LUBIN & ENOCH, P.C.
                              KAPLAN YOUNG & MOLL PARRÓN

                              By: /s/ Nicholas J. Enoch
                              Nicholas J. Enoch, Esq.
                              Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of March 2017, I electronically transmitted the attached Complaint to the Clerk's Office using the ECF System for filing.

/s/ Cristina Gallardo-Sanidad

F:\Law Offices\client directory\Alonzo\Pleadings\2017-3-20 (6080-001) Complaint.wpd